# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Securities and Exchange Commission,<br><br>    Plaintiff<br><br>v.<br><br>Profit Connect Wealth Services, Inc.; Joy I. Kovar, and Brent Carson Kovar,<br><br>    Defendants | Case No.: 2:21-cv-01298-JAD-BNW<br><br>**Sealed Order re: Emergency Ex Parte Motion for a Temporary Restraining Order and Other Pretrial Equitable Relief**<br><br>[ECF Nos. 3, 4, 5, 6] |

The Securities and Exchange Commission sues Profit Connect Wealth Services, Inc., Joy Kovar, and Brent Kovar under 15 U.S.C. §§ 78j(b) and 77q(a)(1)–(3) and 17 C.F.R. § 240.10b-5(b), alleging that they violated the Securities Exchange Acts of 1933 and 1934 and the Exchange Act Rules by fraudulently soliciting the public to invest with their unregistered enterprise, which purportedly uses proprietary artificially intelligent software and a supercomputer to provide greater-than-average returns on securities investments and cryptocurrency mining without the usual risks and outlays.[1]  The Commission moves on an ex parte and emergency basis for an order (1) temporarily restraining defendants from (a) violating federal securities laws and rules in connection with any offer, sale, or purchase of any security, (b) destroying records of their busines operations, and (c) dissipating their assets; (2) requiring defendants to provide accounting of their personal assets; (3) allowing the Commission to conduct expedited discovery; and (4) appointing a receiver with carte blanche access to and control over defendants' assets and business operations.[2]  The Commission also seeks an order

---

[1] ECF No. 1.

[2] ECF Nos. 3 (motion for temporary restraining order), 7 (motion to appoint receiver).

converting the restraining order—if one is entered—into a preliminary injunction.[3]  It

additionally moves to seal the docket and its contents until the earlier of 48 hours after the court

rules on its motion for a temporary restraining order or the Commission moves to unseal the

docket.[4]  Finally, the Commission moves to permit two government attorneys to practice before

the court in all matters relating to this case.[5]

For the reasons discussed below, I grant in part the motion for a temporary restraining

order without notice.  I grant the motion to temporarily seal the docket and its contents.  I also

grant the motions to permit government attorneys to practice before the court in this case.  I set

the motion for a preliminary injunction and the motion to appoint a receiver for hearing at which

I will also consider the Commission's request for an order requiring the defendants to prepare a

detailed accounting of their assets and provide it to the Commission.  Finally, I deny the

Commission's motion for expedited discovery without prejudice to its ability to reurge that

request in a separate motion.

**I.      Emergency ex parte motion for a temporary restraining order [ECF No. 3]**

**A.      Standard to obtain a temporary restraining order without notice**

Federal Civil Procedure Rule 65 authorizes district courts to "issue a temporary

restraining order without written or oral notice to the adverse party or its attorney only if" two

conditions are met.[6]  First, specific facts that "clearly show that immediate and irreparable

injury, loss[,] or damage will result to the movant before the adverse party can be heard in

---

[3] ECF No. 8.

[4] ECF No. 4.

[5] ECF Nos. 5, 6.

[6] Fed. R. Civ. P. 65(b)(1).

opposition" must be established by affidavit or verified complaint.[7]  Second, "the movant's

attorney" must certify "in writing any efforts made to give notice and the reasons why it should

not be required."[8]

### 1.    *Imminent irreparable harm*

The Commission largely relies on the declaration of Dora M. Zaldivar to show

irreparable injury.  Zaldivar is a certified public accountant, employed by the Commission since

2008.  Her duties include conducting inquiries and assisting investigations into possible

violations of federal securities laws.  As part of her work, Zaldivar analyzes financial records,

business-operations records, and other information and documents that the Commission obtains

in the course of its investigations.  The documents that Zaldivar reviews are the type that

accountants routinely rely on to form opinions and make inferences about issues like the forms,

uses, and sources of a company's finances.  Zaldivar makes calculations and observations based

on her review and analysis of records that the Commission obtains.  She also prepares charts and

spreadsheets summarizing her calculations and observations.  Zaldivar was assigned to

investigate Profit Connect's and the Kovars' activities.

Zaldivar declares that from May 2018 to the present, Profit Connect and the Kovars have

run a securities-investment Ponzi scheme.[9]  The alleged scheme involves selling securities in the

form of a "Profit Connect Wealth Builder" account, which the Commission argues constitutes a

security—specifically an investment contract—because the investors are passive, they deposit

money with Profit Connect, which pools all investor funds, makes all investments using its

---

[7] *Id.* at 65(b)(1)(A).

[8] *Id.* at 65(b)(1)(B).

[9] ECF No. 3-3 at ¶¶ 8–23.

proprietary supercomputer and artificially intelligent software, and pays some investors from the pooled funds.

Defendants' pitch is that Profit Connect is a software company that designed artificially intelligent software that runs on "the IBM Watson supercomputer" and "Amazon's systems." Profit Connect uses its artificially intelligent supercomputer to mine for cryptocurrency and trade on the New York Stock Exchange and foreign- and crypto-currency markets. Not satisfied keeping all of the profits for itself, Profit Connect publicly offers the ability for anyone to buy a seat, i.e., computing time, with its supercomputer. To invest and benefit from Profit Connect's supercomputer's mining and trading activities, defendants instruct potential investors to open a "Wealth Builder Account" through Profit Connect's website and put money into that account. Profit Connect offers various accounts and ways to fund them, including (1) a lump-sum investment that's guaranteed a fixed annual return between 20–30 percent, (2) a monthly subscription with deposits between $50 to $1,000 with a guaranteed annual return between 15–20 percent, (3) a partial home-equity lien account with a guaranteed a fixed annual return of 20 percent and monthly compounded interest, (4) and a youth account intended to be given as a gift to children and grandchildren with a fixed annual return of 20 percent and monthly compounded interest.

Zaldivar declares that by using this pitch, defendants have solicited and obtained more than $12,000,000 from at least 277 different people, sometimes through their retirement accounts, in various states.[10] But when Zaldivar reviewed the transactions in Profit Connect's main checking account, into which $13,680,196.54 had been deposited between May 2018 and

---

[10] *Id.* at ¶ 9.

April 2021, she "did not identify any transactions consistent with investing activities."[11]  Nor did she "identify any transactions that appear to be returns or proceeds from investments" like "incoming cash from investment/brokerage accounts that would result from profitable stock trades."[12]  She declares that over 90 percent of the deposits in the account come from individuals and entities that she opines are likely deposits from people investing in the Wealth Builder scheme.[13]

Zaldivar declares that deposits into Profit Connect's accounts have increased over time.[14] She theorizes that is due in part to the fact that Profit Connect's website assures investors that their funds are protected because the company's "'financial reserves are significantly higher than all of its Seat purchaser's deposits combined' and 'Profit Connect Wealth Builder APR, Deposits and Money Back Guarantee are protected by Profit Connects [sic] substantial financial reserves that it maintains to ensure that all of its Seat purchaser's deposits are secure at all times.'"[15]  Yet Zaldivar's review of Profit Connect's bank records show that the balance in its main checking account is less than 20 percent of the total $12,000,000 that investors presumably deposited into that account when they purchased wealth-builder accounts.[16]  Worse, Zaldivar explains, the presumed investor-deposited funds are being disbursed at an alarming rate, and disbursements have also picked up speed.[17]

---

[11] *Id.* at ¶ 9(c).

[12] *Id.*

[13] *Id.* at ¶ 9(d).

[14] *Id.* at ¶¶ 9(f), 10.

[15] *Id.* at ¶ 9(g).

[16] *Id.*

[17] *See id.* at ¶ 10(b) (more than $5,000,000 was disbursed from April to May 2021).

The Commission contends that the scheme is animated by defendants' clever use of social-medial influencers who shill for Profit Connect. These promoters are handsomely paid from investor-deposited funds. Indeed, the evidence shows that over $3,000,000 has been disbursed to individuals whom Zaldivar believes are merely promoters.[18]

But promoters aren't the only people who've been paid from Profit Connect's coffers. Zaldivar declares that more than $2,000,000 has been disbursed to individuals associated with Profit Connect like Joy and Brent Kovar.[19] Profit Connect purchased a single-family residence in Nevada for $440,000 in January 2021.[20] Profit Connect's funds have been used to purchase over $200,000 worth of motorcycles and for payroll in the amount of $180,000,[21] yet only a paltry $629,729 appears to have been disbursed to investors.[22]

Zaldivar explains that Joy and Brent Kovar are the authorized signatories for Profit Connect's checking and savings accounts.[23] According to Zaldivar, over 90 percent of the funds in Profit Connect's checking account were provided by investors who were promised that their deposits were buying time on Profit Connect's supercomputer to make trades and mine cryptocurrency.[24] But there is no evidence that funds were used for investment purposes, rather, they have been used to personally benefit the Kovars and Profit Connect's promoters, with a

---

[18] *Id.* at ¶ 9(h)(i).

[19] *Id.* at ¶ 9(h)(ii)–(iii), (viii), (ix).

[20] *Id.* at ¶ 9(h)(vii).

[21] *Id.* at ¶ 10(b).

[22] *Id.* at ¶ 9(h)(v).

[23] *Id.* at ¶ 8.

[24] *Id.* at ¶ 23.

minimal amount paid to investors who sought early returns—all in the manner of a Ponzi scheme.[25]

Zaldivar rounds out Profit Connect's finances by explaining that it has numerous bank accounts with little to no funds and minimal or no activity.[26] It also has a credit card for which Joy, Brent, and five "Profit Connect" associates are authorized users.[27] Finally, the Commission provides evidence to show that Brent Kovar has defrauded investors in the past. Indeed, he appears to have been permanently enjoined from violating numerous federal securities associated with penny stocks in a case styled *Securities and Exchange Commission v. Sky Way Global, LLC, et al.*, Case No. 8L09-cv-455 (M.D. Fla).[28]

The Commission's evidence shows that defendants have the means and ability to move their assets and business records and that defendants have a pattern of dissipating assets. It can be reasonably inferred from the evidence that, if defendants were provided notice and an opportunity to be heard, they would dissipate, move, hide, and conceal their assets, business equipment, and records, and that the Kovars would continue their operations in another fashion. Should that occur, it appears that a large amount of investor-provided funds will be unrecoverable. This would irreparably harm the investors who are victims of this alleged scheme and potential investors, who are the people that the Commission seeks to protect with this statutory-enforcement action. The Commission has therefore shown that immediate and irreparable injury, loss, or damage will result if defendants are permitted to be heard in opposition on the motion for a temporary restraining order.

---

[25] *Id.*

[26] *Id.* at ¶¶ 13–20.

[27] *Id.* at ¶ 21.

[28] ECF No. 3-2 at 12–14.

### 2. *Explanation for why notice should not be required*

Counsel for the Commission explains that defendants have not received—and should not receive—notice because the evidence shows that they have a habit of disregarding the law, their scheme is ongoing, and they have already dissipated copious amounts of investor assets, including at least $1,200,000 of those funds that Joy Kovar transferred to her personal account in the past two months. Counsel has adequately explained why notice should not be required in this case.

### B. Standard to obtain a temporary injunction

The legal standard for obtaining a temporary restraining order and the legal standard for preliminary injunctive relief are "substantially identical."[29] The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that, to obtain an injunction, the plaintiff "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable injury in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."[30] The Ninth Circuit also recognizes an additional standard: "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied."[31]

Relying on decisions from district courts in the Ninth Circuit, the Commission argues that an even less stringent standard applies here, it must make a two-pronged showing that: (1) a

---

[29] *Stuhlbarg Intern. Sales Co. v. John D. Bush and Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that the "analysis is substantially identical for the injunction and the [temporary restraining order]").

[30] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[31] *Id.* at 20 (emphasis original).

prima facie case exists that defendants have violated federal securities laws and (2) reasonable

likelihood that the defendants will repeat their violations.[32]  In *Federal Trade Commission v.*

*Consumer Defense, LLC*, the Ninth Circuit recently explained that "precedent eliminating the

requirement of a showing of irreparable harm in cases of statutory enforcement, where an

injunction is authorized by the applicable statute," which "pre-dates the Supreme Court's *Winter*

decision," remains good law and does not conflict with *Winter*.[33]  The *Consumer Defense* panel

reiterated the Ninth Circuit's standard: "[i]n the ordinary case, *i.e.* one not involving statutory

enforcement, the traditional irreparable injury showing is required.  On the other hand, in a case

involving statutory enforcement, where the applicable statute authorizes injunctive relief, the

traditional irreparable injury showing is not required."[34]  The Commission relies on two statutes

that authorize it to obtain a permanent or temporary injunction or restraining order without

posting a bond.[35]  So the Commission faces a lighter burden to obtain a restraining order or

injunction in this statutory-enforcement action—it need not show irreparable harm.[36]

 *Consumer Defense* does not expressly address which, if any, of the remaining *Winter*

factors must be met in statutory-enforcement cases.  The panel in that case didn't need to.  The

statute at issue in *Consumer Defense* instructed that the remaining elements must be met: "[u]pon

a proper showing that, weighing the equities and considering the Commission's likelihood of

---

[32] ECF No. 3-1 at 9 (collecting cases).

[33] *Fed. Trade Comm'n v. Consumer Defense, LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019).

[34] *Id.* at 1214 (collecting cases).

[35] 15 U.S.C. § 77t(b) (Securities Act of 1933); *accord id.* at § 78u(d) (Securities Exchange Act of 1934).

[36] *See Consumer Defense*, 926 F.3d at 1212–14.  If the Commission were bound by the *Winter* standard that applies to private litigants, I would find, as explained above, that the Commission has shown that the class of persons it seeks to protect is likely to suffer irreparable harm if the defendants are not temporarily restrained from disposing of or concealing their books, records, assets, and other property.

ultimate success, such action would be in the public interest, and after notice to the defendant, a

temporary restraining order or a preliminary injunction may be granted . . . ."[37]  The statutes at

issue here do not instruct what factors must be met, but merely state that a restraining order or

injunction can issue "upon a proper showing . . . ."[38]  Because the Commission has not provided

Ninth Circuit precedent stating what factors must be met in a statutory-enforcement action where

the enabling statute is silent on that point, out of an abundance of caution, I consider whether the

Commission has met the remaining *Winter* factors.

### 1. *Likelihood of success on the merits*

The Commission asserts five claims for relief alleging, among other things, that

defendants have violated, are violating, and are about to violate federal securities laws and rules

by defrauding, deceiving, and misrepresenting material facts to persons in connection with

defendants' offering securities for purchase or sale.  The Commission relies on Zaldivar's

declaration and defendants' bank, financial, and business records that it has obtained to

demonstrate that it is likely to succeed on the merits of its claims.  Zaldivar declares that she did

not see any activity in defendants' accounts that is consistent with investing activities or

receiving returns on investments.  Profit Connect and the securities it offers are not registered

with the Commission.  Joy Kovar is not licensed to sell securities, nor is she registered with the

Commission in any capacity.

The Commission also provides the transcript of a pitch that Brent Kovar and another

individual made on YouTube.  In the video, Brent Kovar uses language assuring potential

investors that they'll receive significant returns on their investments and that there's little risk to

the system because Profit Connect's supercomputer makes artificially intelligent market trades

---

[37] *Id.* at 1212 (quoting 15 U.S.C. § 53(b)).

[38] 15 U.S.C. § 77t(b); *accord id.* at § 78u(d).

10

and decodes only the parts of the blockchain that have "a high statistical chance" of containing

transactions, which allows the company to be profitable mining Bitcoin anytime it's valued

above $900.[39] Brent assures potential investors that they can withdraw their deposits, returns,

and any interest earned at any time, so as long as it's in increments of $1,000. But defendants

dissuade investors from making big withdrawals, advising them that the most financially sound

option is long-term investment, to get the most from the promised interest compounding.

Despite Brent Kovar's promises and assurances in the video, defendants' financial

records show that investors' funds have not been invested, are not earning returns or interest, and

in most instances have been disbursed to people like Joy Kovar and Profit Connect's promoters.

I find that the Commission has made a prima facie case that defendants are knowingly engaged

in a scheme to defraud the public with statements about their securities-investing system that are

at least materially misleading if not outright false. The Commission has also shown that

defendants are likely to continue violating federal securities laws unless they are temporarily

restrained. Indeed, the alleged scheme is ongoing, several years old, and is picking up speed.

Finally, the evidence tends to show that Brent Kovar has already been permanently enjoined

from violating other federal securities laws. This factor favors granting a restraining order.

### 2. *Balance of equities*

The balance-of-equities factor requires me to weigh the potential harm to the plaintiff in

the absence of a temporary restraining order against the potential harm to the defendants if such

an order is granted. The Commission seeks to restrain the defendants from committing three

categories of acts, so I address the relative harms for each category.

---

[39] ECF No. 3-2 at 56–57.

The Commission seeks to prevent defendants from directly or indirectly violating several federal securities laws, rules, and regulations. I do not perceive any harm that could befall defendants if they are so enjoined. I perceive that the Commission and public will be harmed if, in the absence of a restraining order, defendants continue to commit acts of or in furtherance of their alleged securities-fraud scheme. The harms to the members of the public who participate in defendants' investment program include the loss of money with little chance of recovery; false feelings of hope that they've found a successful investment system; false feelings of urgency to reinvest in that system; and feelings of anger, duress, or embarrassment when no return or money is forthcoming. The harms to the Commission include the continued use of instrumentalities of interstate commerce and federal agencies like the United States Post Office to defraud U.S. citizens and any distrust or anger those citizens feel toward that system or the United States as a result of being defrauded. With no harm to befall defendants in complying with the law, the equities for this element balance in the Commission's favor.

The Commission also seeks to freeze defendants' assets. I perceive that the Commission and pubic will be harmed in the same manners described above if, in the absence of a restraining order, the defendants continue their allegedly fraudulent securities scheme. The only harm I perceive that could befall defendants if they are so enjoined is that Joy and Brent Kovar might be unable to pay for ordinary living expense like food, shelter, transportation, and insurance premiums. The court has no evidence of what the Kovars need for their legitimate and reasonable living expenses. The Kovars can present evidence of their legitimate needs at the hearing for the Commission's motion for a preliminary injunction. With the ability to address this potential harm at the upcoming hearing, I find that the harms to the Commission and the public outweigh the harms to the Kovars.

The Commission also seeks to restrain defendants from destroying, deleting, removing, or transferring any and all business, financial, accounting, and other records concerning their business operations and assets. The only harm I perceive that could befall the defendants if they are so enjoined is having to pay to maintain their records. This is a minimal harm, and I anticipate that the defendants are already required to maintain many of these records for several years under federal or state law. The harm to the Commission and the public it seeks to protect with this enforcement, especially the victims of this alleged scheme, is loss of documentation necessary for recovery, which outweighs the defendants' potential harm.

I therefore conclude that the balance of equities weighs in favor of issuing a narrowly tailored restraining order for these categories of relief. The Commission also seeks an order requiring the defendants to prepare a detailed accounting of their assets and provide it to the Commission. I find that the request for an accounting is better addressed in the context of the Commission's motion to appoint a receiver, not in the motion for a temporary restraining order without notice to the defendants. I therefore decline to rule on the Commission's request for an accounting at this time.

### 3. *Public interest*

The final *Winter* factor requires me to determine whether the requested temporary restraining order would advance or impair the public's interest. The purpose of the requested order is to prevent future harm to the public by denying defendants' ability to continue operating an allegedly fraudulent scheme. The public has a strong interest in protecting its members from being used by schemers and fraudsters. I find that the requested temporary restraining order would advance that public interest. So I conclude that this factor is also met.

The Commission has met its burden to obtain a temporary restraining order without notice freezing the defendants' assets and prohibiting them from disposing of their business and financial records and from violating federal securities laws, rules, and regulations. I therefore grant the Commission's motion in part as to that relief and move on to its remaining motions.

**II.      Motion to temporarily seal case [ECF No. 4]**

"The public has a 'general right to inspect and copy public records and documents including judicial records and documents.'"[40] "Although the common law right of access is not absolute, '[courts] start with a strong presumption in favor of access to a court record.'"[41] "A party seeking to seal judicial records can overcome the strong presumption of access by providing 'sufficiently compelling reasons' that override the public policies favoring disclosure."[42] "When ruling on a motion to seal court records, the district court must balance the competing interests of the public and the party seeking to seal judicial records."[43] "To seal the records, the district court must articulate a factual basis for each compelling reason to seal[,] [which] must continue to exist to keep judicial records sealed."[44] "The Ninth Circuit has, however, "'carved out an exception to the presumption of access' to judicial records" that is "'expressly limited to' judicial records 'filed under seal when attached to a *non-dispositive* motion.'"[45] "Under the exception, 'the usual presumption of the public's right is rebutted[,]'" so "a particularized showing of 'good cause' under [Federal Civil Procedure Rule] 26(c) is

---

[40] *In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1118–19 (9th Cir. 2012) (quoting *Nixon v. Warner Commcns., Inc.*, 435 U.S. 589, 597 (1978)).

[41] *Id.* at 1119 (quoting *Foltz v. St. Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).

[42] *Id.* (quoting *Foltz*, 331 F.3d at 1135).

[43] *Id.* (quoting *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)).

[44] *Id.* (quoting *Kamakana*, 447 F.3d at 1179; *Foltz*, 331 F.3d at 1136).

[45] *Id.* (quoting *Foltz*, 331 F.3d at 1135) (emphasis in original).

sufficient to preserve the secrecy of sealed discovery documents attached to non-dispositive motions."[46]

The Commission does not state what standard applies to its motion.[47] I find that the higher "compelling reasons" standard applies in this context—the motion for a temporary restraining order is dispositive because it addresses the merits of the action and seeks a restraining order before trial on the basis of those merits. The Commission argues that compelling reasons exist to seal the record in this case because the defendants' allegedly fraudulent scheme has been ongoing for several years and has recently picked up speed, and the evidence shows that defendants have not invested the investors' funds but dissipated them to people connected to Profit Connect like Joy Kovar and the company's promoters. The Commission argues and provides evidence that there is a real danger that the defendants will seek to dissipate any remaining investor funds if they learn about this action before the Commission can secure a restraining order prohibiting that conduct. The evidence shows that defendants have the means and willingness to continue their operations and divert investors' funds for their own purposes. The Commission seeks to seal this case for a maximum of 48 hours after the court enters this order ruling on its motion for a restraining order. Based on this record, I find compelling reasons exist to temporarily seal the entirety of this case.

**III.     Motions to permit appearance of government attorneys [ECF Nos. 5, 6]**

Finally, the Commission moves to permit government attorneys Kathryn C. Wanner and Teri M. Melson to practice before the court for all matters related to this case.[48] Counsel

---

[46] *Id.* (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002); *Foltz*, 331 F.3d at 1135, 1138).

[47] ECF No. 4.

[48] ECF Nos. 5, 6.

represent that they are attorneys with the U.S. Securities and Exchange Commission, an agency of the federal government, and are members of good standing in the Bar of the California.  The Commission has met its burden for this relief, so I grant its motions.

**Conclusion**

I.       IT IS THEREFORE ORDERED that the Commission's emergency ex parte motion for a temporary restraining order **[ECF No. 3] is GRANTED IN PART**.  Defendants Profit Connect Wealth Services, Inc., Joy I. Kovar, and Brent Carson Kovar; their officers, agents, servants, employees, and attorneys; and any persons who are in active concert or participation with any of the aforementioned persons (provided they receive actual notice of this order by personal service or otherwise), are temporarily restrained from:

A.       Employing any device, scheme, or artifice to defraud; obtaining money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaging in any transaction, practice, or course of business that operates or would operate as a fraud or deceit upon the purchaser; in violation of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a);

B.       Employing any device, scheme, or artifice to defraud; making any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaging in any transaction, practice, or course of business that operates or would operate as a fraud or deceit upon the purchaser; in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5;

C.      Transferring, assigning, selling, hypothecating, changing, wasting, dissipating, converting, concealing, encumbering, or otherwise disposing of in any manner, directly or indirectly, any funds, assets, securities, claims, or real or personal property, including any notes or deeds of trust or other interest in real property, wherever located, of any one of the defendants or their subsidiaries or affiliates, or owned, controlled, or managed by or in the possession or custody of any of them, including but not limited to the real property located in North Las Vegas, Nevada 89084 and owned by Profit Connect, and from transferring, encumbering, dissipating, or incurring charges or cash advances on any debt or credit card of the credit arrangement of any one of the defendants or their subsidiaries or affiliates; and

D.      Destroying, mutilating, concealing, transferring, altering, or otherwise disposing of, in any manner, directly or indirectly, any document including all books, records, computer programs, computer files, computer printouts, contracts, emails, correspondence, memoranda, brochures, or any other documents of any kind in their possession, custody, or control, however created, produced, or stored, pertaining in any manner to Profit Connect Wealth Services, Inc., Joy I. Kovar, and Brent C. Kovar.

II.     IT IS FURTHER ORDERED THAT:

A.      An immediate freeze is placed on all monies and assets—with an allowance for any necessary and reasonable living expenses to be granted upon good cause shown by application to the court—in all accounts at any bank, financial institution, brokerage firm, or third-party payment processor, all certificates of deposit and other funds or assets held in the name of, for the benefit of, or over which account authority is held by Profit Connect Wealth Services, Inc., Joy I. Kovar, or Brent C. Kovar, including:

| Brokerage or Bank Name | Account Name | Account Number |
|---|---|---|
| Bank of America | Profit Connect Wealth Services, Inc. | XXXXXX8677 |
| Bank of America | Profit Connect Wealth Services, Inc. | XXXXX6622 |
| Bank of America | Profit Connect Wealth Services, Inc. | XXXXX7665 |
| Bank of America | Profit Connect Wealth Services, Inc. | XXXXX7678 |
| Bank of America | Profit Connect Wealth Services, Inc. | XXXXX8722 |
| Bank of America | Joy Kovar | XXXXX7043 |
| JPMorgan Chase & Co. | Profit Connect Wealth Services, Inc. | XXXXX9032 |
| JPMorgan Chase & Co. | Profit Connect Wealth Services, Inc. | XXXXX8820 |
| Navy Federal Credit Union | Profit Connect Wealth Services, Inc. | XXXXX1215 |
| Navy Federal Credit Union | Profit Connect Wealth Services, Inc. | XXXXX3304 |
| HSBC Bank | Profit Connect Wealth Services, Inc.; Joy I. Kovar; or Brent C. Kovar | Unknown |
| Citibank | Profit Connect Wealth Services, Inc.; Joy I. Kovar; or Brent C. Kovar | Unknown |
| Wells Fargo Bank, N.A. | Profit Connect Wealth Services, Inc.; Joy I. Kovar; or Brent C. Kovar | Unknown |

B.      Any bank, financial institution, brokerage firm, or third-party payment processing

holding any of the money or assets described in paragraphs I(C) and II(A) above must hold and

retain them within their control and prohibit the withdrawal, removal, transfer, or disposal of

such money or assets until further order of this court.

1        IT IS FURTHER ORDERED that this temporary restraining order will automatically

2 **EXPIRE at 5:00 p.m. on July 26, 2021**, unless it is extended by the court for cause or converted

3 into a preliminary injunction.

4        IT IS FURTHER ORDERED that the Commission is directed to serve the defendants

5 with summonses and copies of the complaint, all motions, and this order as soon as practicably

6 possible and thereafter to file proof of that service.

7        IT IS FURTHER ORDERED that the Commission is **not** required to post a bond as

8 security for the issuance of this temporary restraining order.

9        IT IS FURTHER ORDERED that the motion to temporarily seal this case **[ECF No. 4] is**

10 **GRANTED**.  This case will remain **SEALED** until the earlier of 5:00 p.m. on July 15, 2021, or

11 the Commission moves to unseal this case, after which time the court will direct the Clerk of

12 Court to unseal this case without further prior notice.

13        IT IS FURTHER ORDERED that the Commission's motions to permit government

14 attorneys to practice **[ECF Nos. 5, 6] are GRANTED**.

15        IT IS FURTHER ORDERED that the Commission's request to conduct expedited

16 discovery, which is made within the body of its motion for a temporary restraining order, is

17 **DENIED WITHOUT PREJUDICE** to the Commission's ability to reurge that request in a

18 separate motion.

19        IT IS FURTHER ORDERED that the Commission's motion for a preliminary injunction

20 and motion to appoint a receiver **[ECF Nos. 7, 8] will be heard** in Courtroom 6D of the Lloyd

21 D. George Federal Courthouse, 333 Las Vegas Blvd. So., Las Vegas, Nevada 89101, at **2:00**

22 **p.m. on July 26, 2021**.  Defendants must file any response to those motions **by July 19, 2021**,

23 and the Commission must file any reply by **July 22, 2021**.

1    The Clerk of Court is directed to **SEND** an electronic copy of this order to the

2  Commission's attorneys at their listed email addresses.

3                                                            _____
                                                             U.S. District Judge Jennifer A. Dorsey
4                                                            Dated: July 14, 2021

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23