Maria A. Gall, Esq.
Nevada Bar No. 14200
BALLARD SPAHR LLP
1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada 89135
Telephone: (702) 471-7000
Facsimile: (702) 471-7070
gallm@ballardspahr.com

Kyra E. Andrassy, Esq.
(admitted *pro hac vice*)
SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone: (714) 445-1000
Facsimile: (714) 445-1002
kandrassy@swelawfirm.com

*Attorneys for Receiver*
*Geoff Winkler of American Fiduciary Services*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>PROFIT CONNECT WEALTH SERVICES, INC., JOY I. KOVAR, and BRENT CARSON KOVAR,<br><br>Defendants. | Case No. 2:21-cv-01298-JAD-BNW<br><br>**APPLICATION FOR ALLOWANCE AND PAYMENT OF FEES AND COSTS OF THE TEMPORARY RECEIVER AND HIS PROFESSIONALS** |

Geoff Winkler of American Fiduciary Services, LLC, who served as the temporary receiver (the "Temporary Receiver" or "Receiver") over Profit Connect Wealth Services, Inc., and any subsidiaries and affiliates (together, "Profit Connect") pursuant to a stipulation approved by the Court on July 23, 2021 (the "Temporary Receiver Order") and until his appointment as the permanent receiver on August 6, 2021, submits this application for allowance and payment of his fees and costs as the Temporary Receiver and the fees and costs of the professionals he employed to assist

him in fulfilling his duties under the Temporary Receiver Order. The period of time covered by this Application is from July 23, 2021, through August 6, 2021 (the "Application Period"), when the Court appointed the Temporary Receiver as the permanent receiver. The Receiver is informed that the Securities & Exchange Commission has no objection to the relief sought in this Application.

## MEMORANDUM OF POINTS AND AUTHORITIES

Because the Temporary Receiver is not a licensed attorney, does not have in-house counsel, and is not a computer expert, he employed professionals to assist him in fulfilling his duties as the Temporary Receiver. Specifically, pursuant to Section III.1.g. of the Temporary Receiver Order, he retained Smiley Wang-Ekvall, LLP, and Ballard Spahr, LLP, as counsel and Stroz Friedberg as his computer forensic experts. Their employment is the subject of a separate motion (ECF No. 32). Pursuant to this Application, the Temporary Receiver and his professionals seek approval of the following fees and costs: (1) $124,325.50 in fees and $18,321.67 in costs for the Temporary Receiver; (2) $10,489.00 in fees for Ballard Spahr, LLP; (3) $3,224.05 in fees and $4.68 in costs for Smiley Wang-Ekvall, LLP; and (4) $118,683.75 in fees and $9,739.99 in costs for Stroz Friedberg.

This Motion is based on the below written argument, the declarations of Geoff Winkler, Maria A. Gall, Esq., Kyra E. Andrassy, Esq., and Sergio Kopelev, all papers on file, and any argument the Court may call and consider.

### I.   RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The Securities and Exchange Commission initiated this action against Profit Connect, Joy Kovar, and Brent Kovar on July 8, 2021, by the sealed, ex parte filing of a complaint and motion for temporary restraining order seeking, among other things, the freezing of defendants' assets and the appointment of a receiver over Profit Connect. The Court granted the ex parte temporary restraining order, in part, by allowing the asset freeze to proceed but set the motion for a hearing in order to provide defendants an opportunity to be heard on the temporary receivership request.

On July 23, 2021, defendants stipulated to modify the temporary restraining order to appoint the Temporary Receiver. Pursuant to the Temporary Receiver Order, the Temporary Receiver was authorized to employ professionals that he deemed necessary to assist him in fulfilling his duties. The Temporary Receiver Order further provided that "Defendants Profit Connect, J. Kovar, and B. Kovar, and their subsidiaries and affiliates, shall pay the costs, fees and expenses of the Temporary Receiver incurred in connection with the performance of his duties described in this Order, including the costs and expenses of those persons who may be engaged or employed by the Temporary Receiver to assist him in carrying out his duties and obligations. All applications for costs, fees, and expenses for services rendered in connection with the receivership other than routine and necessary business expenses in conducting the receivership, such as salaries, rent, and any and all other reasonable operating expenses, shall be made by application setting forth in reasonable detail the nature of the services and shall be heard by the Court."

The Temporary Receiver secured the bank accounts and a cryptocurrency account at Coinbase and obtained records that enabled him to determine the activity within the cryptocurrency account. Because Coinbase's reports contained material that it deemed trade secrets, the Temporary Receiver needed counsel to work with counsel for Coinbase to address its concerns regarding that material. Because Profit Connect was still an operating business, the Temporary Receiver also encountered a number of personnel issues ranging from health insurance coverage to termination notices to payroll, all of which required legal advice. Counsel coordinated their efforts to avoid duplication of services.

During this time, the Temporary Receiver required the services of Stroz Friedberg to ensure that all of the electronic data was preserved and secured at the multiple locations and to access investor information. In the Temporary Receiver's experience, this is one of the most critical steps to the ultimate success of a receivership.

On August 6, 2021, following another stipulation of the parties, the Court converted the temporary restraining order to a preliminary injunction and appointed the Temporary Receiver as the permanent receiver of Profit Connect.

As of the date of this Application, the Receiver is holding approximately $7.525 million in cash and cryptocurrency belonging to Profit Connect. As set forth in the motion to approve the employment of the professionals and because receivership work is a form of public service, each of the professionals has agreed to discount their typical hourly rate by 15%, and this discount is reflected in the fees being sought in this Application.

## II.  LEGAL AUTHORITY

"The power of a district court to impose a receivership … derives from the inherent power of a court of equity to fashion effective relief." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). "The primary purpose of equity receiverships is to promote orderly and efficient administration of the Receivership Estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986.) "[T]he practice in administering an estate by a receiver … must accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66.

As the Ninth Circuit explained:

> A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad. The district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership. The basis for this broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions.

*SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005) (citations omitted); *see also CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference' to the court's supervisory role, and 'we generally uphold reasonable procedures instituted by the district court that serve th[e] purpose

4

of orderly and efficient administration of the receivership for the benefit of creditors.").

Decisions regarding the timing and amount of an award of fees and expenses to the Receiver and his or her professionals are committed to the sound discretion of the Court. *See SEC v. Elliot*, 953 F.2d 1560, 1577 (11th Cir. 1992) (rev'd in part on other grounds, 998 F.2d 922 (11th Cir. 1993)). In determining the reasonableness of fees and expenses requested in this context, the Court should consider the time records presented, the quality of the work performed, the complexity of the problems faced, and the benefit of the services rendered to the Estate, along with the Commission's position on the request, which is entitled to "great weight." *SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973).

### III. THE FEES AND COSTS BEING REQUESTED

Below is a description of the services provided by each of the professionals during the Application Period. All of the fees and expenses incurred during the Application Period would have otherwise been incurred during the permanent receivership period and will benefit the receivership estate moving forward.

#### a. The Temporary Receiver (Ex.1)

[Fees of $124,325.50 and costs of $18,321.67]

Pursuant to paragraph III(1) of the Temporary receiver Order, the Temporary Receiver was empowered and tasked with the following:

    a.    to have access to, and make an accounting of, all funds, assets, collateral, premises (whether owned, leased, pledged as collateral, occupied, or otherwise controlled), choses in action, books, records, papers and other real or personal property, wherever located (collectively, the "Assets"), of or managed by Defendant Profit Connect and its subsidiaries and affiliates (collectively, the "Receivership Entities");

    b.    to have full, complete and immediate access to the books and records, wherever located, of Defendant Profit Connect, including but not

limited to all business and financial records, bank and other financial statements, and all electronic records, wherever located;

    c. to have full, complete, and immediate access to the principals, managers, directors, employees, agents or consultants of Defendant Profit Connect and its subsidiaries and affiliates or anyone else who is otherwise associated with Defendant Profit Connect, including but limited to Defendants B. Kovar and J. Kovar;

    d. to conduct such investigation and discovery as may be necessary to locate and account for all of the assets of or managed by Defendant Profit Connect and its subsidiaries and affiliates, and to engage and employ attorneys, accountants and other persons to assist in such investigation and discovery;

    e. to work with the attorneys, accountants, appraisers, and other independent contractors and technical specialists from the SEC to locate and account for all of the assets of or managed by Defendant Profit Connect and its subsidiaries and affiliates;

    f. to take such action as is necessary and appropriate to prevent the dissipation, concealment, or disposition of any Assets;

    g. to choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

    h. to make an accounting, as soon as practicable, to this Court and the SEC of the assets and financial condition of Defendant Profit Connect and its subsidiaries and affiliates, and to file the accounting with the Court and deliver copies thereof to all parties; and

    i. to have access to and monitor all mail, electronic mail, and video phone of the Receivership Entities in order to review such mail, electronic mail,

6

and video phone which he or she deems relates to their business and the discharging of his or her duties as Temporary Receiver.

Pursuant to the Temporary Receiver Order, the Temporary Receiver and his team performed the following duties:

- analyzed and assessed immediate financial issues, including, but not limited to payroll, insurance, operating expenses, credit cards, wire transfers, petty cash and others;
- analyzed, captured, and processed all bank account data;
- gained access to, reviewed, and captured all data related to investors and agents;
- visited, mapped out, and assessed every physical location of defendants;
- interviewed key parties and employees to better understand business operations, fundraising activities and other information to assist in the orderly administration of the receivership estate;
- served notice of the Order to additional parties;
- worked with our computer forensics team to secure, gather and preserve all company data;
- gained access and control of all digital assets of defendants, including websites, cryptocurrency wallets, CRM systems, and other operating systems;
- quickly analyzed and assessed business operations, developed pro forma financials to determine short, medium and long-term profitability potential of all distinct business lines vis-à-vis ability to meet existing investor repayment obligations and, with the assistance of the parties, performed cost-benefit analyses of continued operations versus wind-down of the business, with anticipation of then executing on the strategy that is decided;

7

- met with third party service providers, including attorneys, accountants, and other service providers;
- inventoried and assessed assets at all locations;
- assisted the company and employees with a COVID outbreak, including testing, protocols, and professional cleaning of the facility;
- preserved and documented other sources of evidence;
- identified and froze additional bank, brokerage, or securities related accounts;
- identified personal and real property in the name of receivership defendants;
- served notice of Temporary Restraining Order and Asset Freeze on all financial institutions, employees, vendors, landlords, investors and other interested third parties;
- immediately ceased all fund raising and investment activities, if applicable, including monthly and quarterly payments and payments upon maturity;
- identified and created a list of investors, creditors, and other interested parties to be noticed in the case;
- began to prepare a forensic accounting to identify assets, determine any recipients of ill-gotten gains and work with the SEC and the court to determine if there are other sources of potential recovery; and
- reviewed documents for potential tax related issues.

///
///
///
///
///
///
///

The Temporary Receiver's fees for the Application Period are as follows:

| *Name* | *Title* | *Hours* | *Rate/Hr.* | *Total* |
|---|---|---|---|---|
| Geoff Winkler | Temp. Receiver | 121.1 | $340.00 | $41,174.00 |
| John Hall | Accountant | 107.4 | $310.00 | $33,294.00 |
| Michelle Priddy | Director | 50.0 | $289.00 | $14,450.00 |
| Renee Diefenderfer | Associate | 98.5 | $255.00 | $25,117.50 |
| Ysabel Willits | Analyst | 68.6 | $150.00 | $10,290.00 |
| *Total* | | *445.6* | *$279.00* | *$124,325.50* |

Due to its broad range of experience and expertise, AFS performs almost all required work in-house, saving both time and money, including tasks involving corporate accounting, forensic accounting, case administration, claims administration, asset valuation, investor communication and internet technology. AFS' billing philosophy is to leverage work down to the staff member with the lowest bill rate that also has the skills and experience necessary to complete the task. This allows AFS to minimize the cost to complete all work associated with the case, ensuring a maximum return to stakeholders involved in the matter while also preserving the quality of our work product. AFS does not bill for travel time in regulatory cases.

AFS's rates include a 15 percent discount off its already discounted hourly rates for government matters and will not increase for the pendency of the case. Both the standard regulatory rate and the discounted regulatory rate reflect a significant discount off our standard consulting rates.

All billing standards meet or exceed the Securities and Exchange Commission's Billing Instructions for Receivers in Civil Actions Commenced by the

9

U.S. Securities and Exchange Commission (SFAR) and the U.S. Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses.

The Temporary Receiver's expenses for the temporary receivership period (July 23, 2021 - August 6, 2021) are as follows:

| *Category* | *Total Cost* |
|---|---|
| Airfare | $5,826.32 |
| Transportation | $2,143.61 |
| Lodging | $6,671.75 |
| Meals | $2,844.00 |
| Technology | $88.99 |
| Covid Testing | $747.00 |
| *Total* | *$18,321.67* |

AFS will not seek reimbursement for routine copying, facsimile, postage, or other expenses. Any expenses which we will seek to have reimbursed will be done so in accordance with the SEC and U.S. Trustee guidelines above. Costs directly attributable to the administration of the estate will be paid directly by the estate in accordance with the order of appointment.

b. **Ballard Spahr (Ex. 2)**

[Fees of $10,489.00]

During the Application Period, attorneys at Ballard Spahr LLP performed services on multiple projects, and their work included, among other things: (1) issuing subpoenas to various entities in an effort to track, trace, and recover Profit Connect assets; (2) investigating ownership of certain Profit Connect assets in the possession and/or control of third-parties; (3) ensuring that Profit Connect employees were properly terminated in connection with the cessation of business operations; (4) ensuring that Profit Connect health plans were appropriately terminated and any

10

attendant notices provided; and (5) liaising with counsel of certain Profit Connect service providers to ensure that the Court's temporary restraining order was properly adhered to.

The Temporary Receiver's primary counsel from Ballard Spahr billed 20.5 hours at a standard rate of $495.00/hour for a total of $10,147.50; in addition, Jay Zweig billed .90 hours at $795.00/hour for a total of $715.50 to advise on employment termination matters, which is in Mr. Zweig's area of labor and employment law expertise; Edward Leeds billed 1.80 hours at $795.00/hour for a total of $1,431.00 to advise on employee benefit matters, including in particular COBRA, mini-COBRA, and other related implications to termination of health plans, which is in Mr. Leeds's area of employee benefits expertise; Arlene Goldhammer billed .20 hours at $230.00/hour for a total of $46.00 in connection with research performed on asset ownership, which research is Ms. Goldhammer's area of specialty as a research analyst. The invoice reflects a 15% discount off these fees.

### c. Smiley Wang-Ekvall (Ex. 3)

[Fees of $3,224.05 and costs of $4.68]

Smiley Wang-Ekvall, which is based in Southern California, assisted the Receiver with the Profit Connect location in Pasadena, California. It participated in strategy calls with the Temporary Receiver about identification and preservation of assets, which will help guide the next steps taken by the Temporary Receiver. It also gave direction on general employee and insurance issues that came up during the Application Period since Profit Connect was an operating business, including preparation of a draft termination notice to employees.

The Temporary Receiver's primary counsel from Smiley Wang-Ekvall billed $2,570.40 in fees; Michael Simon, an associate, billed $563.55 in fees; and Janet Hogan, a paralegal, billed $90.10 in fees. These fees reflect a 15% discount off of the standard hourly rates.

///

11

### d. Stroz Friedberg (Ex. 4)

[Fees of $118,683.75 and costs of $3,865.24]

During the Application Period, staff from Stroz Friedberg (an Aon company) assisted the receiver with understanding, quantifying and collecting data from various Profit Connect IT systems. This work included, among other things: (1) inventorying digital devices used by Profit Connect principals and employees; (2) gaining access to and exporting financial data for Profit Connect; (3) performing forensic collection of data from various digital devices; (4) exporting data from various digital devices; (5) processing and hosting data exported from various digital devices; (6) performing searches of hosted data; (7) assisting with Profit Connect employee interviews; (8) taking control of Profit Connect entry, and surveillance systems; and (9) taking control of Profit Connect Office 365 productivity environment (email, document storage, etc.).

The Temporary Receiver's primary consultant from Stroz Friedberg billed 51.25 hours; in addition, Allan Vogel billed 79.15 hours, Jishnu Pradeep billed 89 hours, Kyle Henderson billed 3 hours and Rachel Kang billed 1.5 hours to assist the primary consultant with forensic tasks outlined above at a discounted rate of $525 per hour for a total of $117,416.25 dollars. Additionally, Joe Rossi billed 1.5 hours, Ericka Brown billed 2 hours, and Oleg Gorodetskiy billed 3 hours to assist the primary consultant with electronic discovery tasks outlined above at a discounted rate of $195 per hour for a total of $1,267.50 dollars. Finally, Stroz Friedberg billed $2,500 for the use of the proprietary 0365 Collection and Response tool, and $1,365.24 in various Expenses. These rates and accompanying invoice already includes discounts from Stroz Friedberg standard rates.

### IV. CONCLUSION

Based on the foregoing and pursuant to Section III.6 of the Temporary Receiver Order, the Receiver and his professionals request entry of an order:

1    (1) Allowing the Receiver $124,325.50 in fees and $18,321.67 in costs for the
2 Application Period, and authorizing the Receiver to use funds on hand to pay the
3 allowed fees and costs;

4    (2) Allowing Ballard Spahr $10,489.00 in fees for the Application Period,
5 and authorizing the Receiver to use funds on hand to pay the allowed fees and costs;

6    (3) Allowing Smiley Wang-Ekvall, LLP $3,224.05 in fees and $4.68 in costs
7 for the Application Period, and authorizing the Receiver to use funds on hand to pay
8 the allowed fees and costs;

9    (4) Allowing Stroz Friedberg $118,683.75 in fees and $3,865.24 in costs for
10 the Application Period, and authorizing the Receiver to use funds on hand to pay the
11 allowed fees and costs; and

12    (5) Granting such other and further relief as the Court deems just and
13 appropriate.

15    Dated: August 24, 2021

16                                         BALLARD SPAHR LLP

17                                         By: /s/ Maria A. Gall
                                               Maria A. Gall, Esq.
18                                             Nevada Bar No. 14200
                                               1980 Festival Plaza Drive, Suite 900
19                                             Las Vegas, Nevada 89135

20                                             -and-

21                                             Kyra E. Andrassy, Esq.
                                               (admitted *pro hac vice*)
22                                             SMILEY WANG-EKVALL, LLP
                                               3200 Park Center Drive, Suite 250
23                                             Costa Mesa, California 92626

24                                         *Attorneys for Receiver*

13

# CERTIFICATE OF SERVICE

On August 24, 2021, I served the foregoing **APPLICATION FOR ALLOWANCE AND PAYMENT OF FEES AND COSTS OF THE TEMPORARY RECEIVER AND HIS PROFESSIONALS** on the following parties through their counsel of record by filing the same with the Court's CM/ECF system:

**Plaintiff Securities and Exchange Commission:**

Kathryn C. Wanner, Esq.
Teri M. Melson, Esq.
Securities and Exchange Commission
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Tel: (323) 965-3998
Fax: (213) 443-1904
wannerk@sec.gov
melsont@sec.gov

**Defendants Joy I. Kovar and Brent Carson Kovar:**

Dale A. Hayes, Jr., Esq.
Jeremy D. Homes, Esq.
Hayes Wakayama
4735 S. Durago Drive, Suite 105
Las Vegas, Nevada 89147
Tel: (702) 656-0808
Fax: (702) 655-1047
dhayes@hwlawNV.com
jholmes@hwlawNV.com

                                                   /s/ Adam Crawford
                                                   An Employee of Ballard Spahr LLP