Maria A. Gall, Esq.
Nevada Bar No. 14200
BALLARD SPAHR LLP
1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada 89135
Telephone: (702) 471-7000
Facsimile: (702) 471-7070
gallm@ballardspahr.com

Kyra E. Andrassy, Esq.
Admitted *Pro Hac Vice*
SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone: (714) 445-1000
Facsimile: (714) 445-1002
kandrassy@swelawfirm.com

*Attorneys for Receiver*
*Geoff Winkler of American Fiduciary Services*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>           Plaintiff,<br><br>v.<br><br>PROFIT CONNECT WEALTH SERVICES, INC., JOY I. KOVAR, and BRENT CARSON KOVAR,<br><br>           Defendants. | Case No. 2:21-cv-01298-JAD-BNW<br><br>**SECOND STATUS REPORT OF GEOFF WINKLER, RECEIVER FOR PROFIT CONNECT WEALTH SERVICES, INC., AND PETITION FOR INSTRUCTIONS**<br><br>**[Hearing Requested]** |

Geoff Winkler of American Fiduciary Services, LLC, the permanent receiver for Profit Connect Wealth Services, Inc., and any subsidiaries and affiliates (together, "Profit Connect") submits his second status report regarding the receivership pursuant to Local Rule 66-4(b).

///

///

///

2899179.1

## I.    SUMMARY OF PROFIT CONNECT BUSINESS OPERATIONS[1]

Profit Connect was incorporated on May 2, 2018, in the state of Nevada. Joy Kovar is the President and Treasurer, Brent Kovar is the Director, and Mark Wildes is the Secretary. Joy Kovar owns the vast majority of Profit Connect and Mark Wildes and Eric Garrison are owners of a small percentage of the company. The late Eddie Kona (also known as Donald Edward Sabisch) and Eric Garrison have been mentioned by Brent Kovar as founders and, in the case of Eddie Kona, an employee of Profit Connect. For practical purposes, Brent Kovar was exclusively in charge of running the day-to-day operations of Profit Connect, despite almost all corporate, legal, and financial documents and accounts being in the name of Joy Kovar.

Profit Connect conducted business in a warehouse facility located at 6955 Speedway Blvd, T101 & T102, Las Vegas, NV 89115 and a retail office space located at 6569 Las Vegas Blvd S. C-165, Las Vegas, NV 89119. They stored office equipment and additional assets at a third location, the "Pasadena Data Center," located at 2770 E. Walnut Street, Pasadena, CA 91107, although this location was never in operation, despite statements to the contrary. Additionally, Profit Connect kept a mailbox at a UPS store located at 4262 Blue Diamond Rd., Ste 102-373, Las Vegas, NV 89139.

Profit Connect advertised  as a business that primarily mined cryptocurrency, as well as validated credit card transactions, while engaging with Star Link, Elon Musk, Berkshire Hathaway, and other notable persons and businesses. They promoted building and running "Super Computers" that were cooled using magnetic fields, dielectric (mineral) oil, and liquid nitrogen within cylinders, allegedly allowing them to overclock their mining computers in order to verify transactions on the blockchain faster than anyone else using their custom-made mining algorithms. They promoted their success on their website and social media, guaranteeing investors a

---

[1] This summary is largely the same as that contained in the Receiver's First Status Report but is included here in the interest of thoroughness and for a reader who may not have reviewed the First Status Report.

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

20%-30% return for purchasing computer seat time with zero risk. They assured their investors their funds were FDIC-insured and encouraged customers to become agents who would then make commissions off their referrals who started a "Wealth Builder" account.

Despite these assertions, there is no evidence that Profit Connect ever worked with credit card processing companies or any of the other companies listed throughout their marketing materials. Profit Connect was, however, in the business of mining cryptocurrency, although actual mining activities only commenced about one week before the start of the temporary receivership and not as they had told investors and agents, which is that they had been mining for years and were very successful. Profit Connect only made approximately $300 from mining activities up to the start of the permanent receivership, an approximately three-week period of time, before accounting for the cost of computers, labor, or electricity. The custom algorithm that Profit Connect touted as a difference-maker ultimately did not work and they ended up buying standard mining software commonly used in the marketplace. Despite a few weeks of efforts in my then-capacity as the temporary receiver, my team of computer experts, and in-house IT professionals, we were unable to produce a proof-of-concept model that would be able to cool the mining computers in such a way to provide a competitive advantage and ultimately, the business was deemed non-viable.

Profit Connect had sales agents ("Agent") who touted the alleged Profit Connect business. To become an Agent of Profit Connect, a person would usually pay $49 per month, and this provided them with a webpage, business cards, an ID card, and a phone extension. The Agent structure of Profit Connect was comparable to other multilevel marketing businesses in that Agents could have up to five levels of Agents working underneath them, generating commissions for everyone in the referral line every time a new customer invested. Agents were quoted on Facebook telling followers, "[w]e brought in another $12 Million yesterday which makes a total

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

of $171 Million in 18 months, and we still have another $72 Million committed!!" Profit Connect promoted content saying "Profit Connect has achieved the status of Business Advantage Platinum Honors tier member with Bank of America, which is their highest level of account accolades and benefits. This account status is a result of Profit Connects financial success as proven by maintaining high account balances." At the time of the receivership, Brent Kovar stated that he thought they had 1,000-2,000 agents, but records reveal that number is closer to 650, with only about 150 ever being paid commissions, pending final analysis in the Receiver's accounting. Most customers invested in Profit Connect by sending checks, wiring funds, or bringing cash to one of their locations. Some customers agreed to Profit Connect's offering of putting a lien on their real property in exchange for purchased computer seat time.

Additionally, Brent Kovar claimed, without substantiation, to have fiber optics coming in and connected to the local Nellis Air Force base. His vision included partnering with casinos by installing cylinders in their pools. These cylinders would house the Supercomputer rigs, heating the pool, and mining cryptocurrency at the same time. His vision for the raw land Profit Connect purchased in Searchlight, Nevada, included a plan of building three million square feet located next to a solar farm. The land was purchased in Profit Connect's name and they wanted to provide their own in-house security rather than outsource it, which is how Brent Kovar justified purchasing several high-end side-by-side dune buggies. Profit Connect's plan included dangling installed cylinders with supercomputers from house boats in Lake Mohave because it is deep and cold. Brent Kovar was about to sign a new lease adjacent to the current retail space to include thousands of additional square feet to train employees in the "Wealth Builder Mortgage" product and provide a training space for a growing team of international agents. His vision included needing to build houses on the Searchlight properties to provide housing to employees. His purported intent with the house he and Joy Kovar were living in was to prototype it for houses

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

to be built in Searchlight. They tried to purchase the remaining parcels in Searchlight but were delayed due to water and septic issues in the area. At the time of the receivership, they were negotiating a repair in order to effectuate the purchase of the additional properties and had already signed earnest money agreements.

Profit Connect had a total of 21 employees on the payroll as of July 2021. Employees in the warehouse were responsible for operating heavy machinery, building tanks and rigs, using hand tools, stocking supplies, troubleshooting development issues, unloading trucks, storing delivered goods, and picking up materials. Employees that were responsible for administrative and marketing tasks included producing promotional videos, new client development, creating graphics, operating machinery, data entry, checking mail, answering phones, paying bills, processing payroll, scanning in checks, and cleaning. Finally, there was a small group of IT employees that was responsible for keeping internal systems running, assembling computers, working on the mining algorithm, and running cooling tests using the dielectric oil and pool chillers.

## II.   SUMMARY OF THE RECEIVER'S OPERATIONS (LR 66-4(b)(1))

### 1.   The Receiver's Investigative and Marshalling Operations

The Securities and Exchange Commission initiated this action against Profit Connect, Joy Kovar, and Brent Kovar on July 8, 2021, when it filed an ex parte complaint and motion for temporary restraining order seeking, among other things, the freezing of defendants' assets and the appointment of a receiver over Profit Connect. The Court granted the ex parte temporary restraining order, in part, by allowing the asset freeze to proceed but set the motion for a hearing on the other matters for July 26, 2021.

On July 23, 2021, the defendants stipulated to modify the temporary restraining order to appoint Geoff Winkler as the temporary receiver, giving him limited powers.  The Temporary Receiver immediately deployed his team to Profit Connect's Las Vegas warehouse and imaged Profit Connect's electronic records,

interviewed its principals and employees, reviewed books and records, and observed Profit Connect's business. The Temporary Receiver ensured all bank and cryptocurrency accounts were frozen and obtained records that enabled him to determine the activity within the cryptocurrency account.

On August 4, 2021, Brent Kovar notified the Temporary Receiver that one of the Profit Connect employees had tested positive for COVID-19. The Temporary Receiver, with the support of Brent Kovar, immediately sent everyone home and requested they get tested and provide documentation of a negative test result prior to returning to work. At least six employees and one member of the Temporary Receiver's team tested positive and were asked to follow CDC protocols for quarantining. The Temporary Receiver hired a professional cleaning company to clean and sanitize the entire facility.

On August 6, 2021, following another stipulation of the parties, the Court converted the temporary restraining order to a preliminary injunction and appointed the Temporary Receiver as the Permanent Receiver of Profit Connect. *See* Receivership Order (ECF No. 26.) The Receiver and his team spent an additional week at the Las Vegas location overseeing the operations and attempting to find a solution that would allow Profit Connect to continue to operate legally and profitably to maximize return to investors. Brent Kovar, Joy Kovar, investors, agents and the Profit Connect employees were cooperative with the Receiver and his team. A business plan for Profit Connect was not completed prior to the receivership and was requested of Brent Kovar by the Receiver, upon arrival. Extensive interviews were conducted with the employees and certain Agents. The Receiver held a staff meeting to inform employees about the receivership and the case and what to expect, in addition to answering any questions at that time.

A few employees requested to meet with the Receiver outside of the Profit Connect facilities so they could speak candidly. The Receiver and his team met with these individuals to better understand their concerns and gather additional

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

information that benefited the receivership estate. The Receiver, his staff, and the Forensic IT team spent several weeks collecting and reviewing data, communicating with Profit Connect parties, observing operations, and documenting assets and information. After determining that there was no viable business to continue operating, the Receiver terminated the employees and closed the offices, retaining a few on a contract basis to assist with the wind-down of operations and preparation for the sale of the personal property.

The Receiver and his team canceled services, consolidated locations, and terminated a lease, including the 6569 Las Vegas Blvd. retail space and the Pasadena location, saving the expense of operating multiple locations using investor funds. They moved all assets from the Pasadena location to the warehouse and completed inventory of all physical assets in the warehouse. The Receiver and his team collected documents and digitized them for further review. The Receiver is now in the process of reviewing books and records to understand the flow of funds, analyzing their sources and uses, and gathering information about potential assets that may have value for creditors.

In addition to receiving and sending thousands of emails and conducting numerous phone calls, the Receiver conducted a video conference for all interested parties on September 29, 2021. On this call, the Receiver provided information about the receivership process, information specific to this case, and allow the interested parties to ask submitted questions. Almost 150 interested parties participated in the call. The Receiver has also established a website at www.profitconnect-receivership.com to provide interested parties with a source of information about the receivership and allow investors and creditors a platform to provide the Receiver with updated contact information. The Receiver and his team have collected nearly 400 forms sent in through the website that include contact information and specific information with how they are associated with Profit Connect. The Receiver is using

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

1   this information to update the database of records obtained from Profit Connect's

2   internal computer systems.

3       After getting approval from the Court, the Receiver and his team held a virtual

4   auction for all personal property from the retail store, the Pasadena location, the

5   North Las Vegas home, and the Speedway warehouse starting on December 8th and

6   closing on December 15th.  December 14th was a preview day where people could

7   come to the warehouse and see the items available and ask questions. James G.

8   Murphy Inc. was the auction company that managed the event and PrideStaff was

9   used to support with two temporary laborers.

10      The auction was hosted at the Warehouse location, 6955 Speedway Blvd, T101

11  &T102, Las Vegas, NV 89115. The proposal from James G Murphy included a range

12  of potential revenue with a conservative amount of $901,100 and an optimistic

13  amount of $1,151,900. The auction concluded with a net profit of $1,259,817, far

14  exceeding initial expectations. Some of the big ticket items included the sale of three

15  Can-Am's that sold for $182,750, a 2021 RAM 1500 BigHorn that sold for $46,250,

16  the 2021 Ford F650 that sold for $86,500, and large amounts of computer hardware

17  that sold well above retail prices.

18      During this reporting period, the Receiver has collected $4,071,420.75, which

19  does not include the auction proceeds which were received in January, and paid

20  $449,205.99 in expenses of the receivership estate. The breakdown of funds collected

21  and expended are detailed below.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

1
2
3
4
5
6
7
8
9
10
11
12

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SEC v. Profit Connect Wealth Services, Inc. et al**
**Summary Income Statement**
**December 31, 2021**

| | |
|---|---:|
| *Cash at Beginning of Period* | *4,222,092* |
| *Cash Inflows* | |
| Residual Wells Fargo Funds | 1,472 |
| Liquidation of Cryptocurrency | 4,069,949 |
| *Total Cash Inflows* | *4,071,421* |
| *Cash Outflows* | |
| Utilities | (30,005) |
| Warehouse Rent | (33,516) |
| Property Taxes | (4,080) |
| Temporary Workers | (4,324) |
| Payments to Professionals | (377,280) |
| *Total Cash Outflows* | *(449,206)* |
| *Cash at End of Period* | *7,844,307* |

**SEC v. Profit Connect Wealth Services, Inc. et al**
**Summary Balance Sheet**
**December 31, 2021**

| | |
|---|---:|
| *Assets* | |
| EWBK Account | 7,844,307 |
| Auction Proceeds In Transit | 1,259,817 |
| NFCU Residual Funds | 251 |
| Insurance Claim | 25,000 |
| Real Property | 1,723,820 |
| Professional Liability Litigation | 5,000,000 |
| Third Party Litigation | 3,200,000 |
| *Total Assets* | *19,053,196* |
| *Liabilities* | |
| January 2022 A/P | 7,202 |
| Q4 2021 Professionals Payments | 405,110 |
| Accrued Professionals | 82,785 |
| *Total Liabilities* | *495,098* |
| *Equity* | |
| Net Cash Investors | 23,692,505 |
| Retinained Earnings | (5,134,407) |
| *Total Equity* | *18,558,098* |

The Receiver's fees and those of his legal professionals have been necessitated, in no small part, by the nature of the entity in receivership. Specifically, Profit Connect had no books and records, including books of account. It had no functioning accounting department, including no person properly handling accounts receivables and payables. The Receiver has had to recreate, and is still in the process of recreating, accounting records by reconstructing the entity's financials using financial statements and offsetting financial records. The majority of these statements and records have had to be procured through subpoenas served on financial institutions. The subpoenas have necessitated work from the legal professionals, both in terms of issuing the subpoenas, but also in terms of negotiation and enforcement.

In addition, the Receiver has experienced a substantial amount of opposition in connection with third-party compliance with the Receivership Order. For instance, although the Receivership Order expressly permits the receiver to take control of Profit Connect's accounts, mails, and assets, a number of third-party custodians refused to turn over access because the assets they controlled were not specifically identified in the Order. The Receiver and/or his counsel had to negotiate access with nearly every third party, including financial institutions and utility providers. And, as the docket of this matter reflects, certain third parties would not provide access until an order specifically identifying the property at issue was entered by the Court (*see, e.g.*, ECF Nos. 31, 33).

Also, despite the Receivership Order and the principles underlying a federal equity receivership, the Receiver has discovered multiple lawsuits filed by investors to recoup their investments ahead of other investors. One investor refused to either dismiss or stay his lawsuit pending the receivership, requiring the Receiver's counsel to file a motion to enjoin the investor's lawsuit under the All Writs Act. Upon receiving a copy of the motion, the investor promptly dismissed his lawsuit. The Receiver is also aware of a putative class action that is being formed by a certain set

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

of investors and counsel.  The Receiver and his counsel have had to engage with counsel leading these anticipated and pending lawsuits in order to preserve the assets of the receivership estate.

The foregoing highlights some of the actions the Receiver and his legal professionals have been constrained to undertake early in this case and which drives their fees.  That said, the Receiver's prompt action in reconstructing Profit Connect's financial records has assisted in his preservation and marshalling of Profit Connect property, including his efforts to quickly seize cryptocurrency initially valued at $2 million, but that he ultimately sold for over $4 million, increasing the return to investors by over $2 million.

Also, the Receiver's push to quickly seek Court approval for the sale of the business assets maximized the value of those assets by selling them in the same model year they were purchased, and before new models were produced. This, combined with the current international microchip shortage, allowed the Receiver to exceed all expectations for the auction and ultimately will allow him to return more money back to investors. This prompt sale also allowed the Receiver to turn the building back over to the landlord in December and thereby reduce the monthly cost to the estate by over $25,000 per month.

The Receiver also seeks to monetize Profit Connect's real property.  The Receiver has prepared a motion to approve his retention of Braun Co. as his real estate broker to list and sell the real property owned by Profit Connect in North Las Vegas, Nevada and Searchlight, Nevada, with the goal to maximize the sale price and reduce the cost to the estate for maintaining the properties and paying property taxes.  The Receiver expects to file the motion in the next week or so.

Finally, during the reporting period, the Receiver identified potential claims that belong to the receivership estate by gathering information, issuing subpoenas, and reviewing books and records.  Based on his continuing investigation, the Receiver anticipates there may be further litigation to clawback fraudulently transferred

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

funds and/or seek damages related to the Profit Connect scheme.  The investigative process has been made significantly more efficient as a result of the efforts of Stroz Friedberg to provide access to the books and records and documents electronically and in a searchable database.

Indeed, Stroz Friedberg has collected and processed over 20 Terabytes of data. The costs associated with Stroz Friedberg's efforts at the beginning of the case, when the documents were being collected and processed, will ultimately result in lower receiver and attorney fees because as the receiver's team and counsel can conduct strategic searches to eliminate irrelevant data and narrow the review universe.

At bottom, the efforts of the Receiver and his team during the reporting period will pave the way for additional recoveries to be obtained by the estate.

**B.    The Receiver's Finance and HR Operations[2]**

As noted in the First Receivership Report (ECF No. 52), Profit Connect has no identifiable accounting books and records, or processes and procedures normally in place to effectuate the typical financial and accounting activities of a business. During the period covered by this Second Report, the Receiver continued his efforts to investigate the accounting operations of the entities in receivership to fulfill his tax reporting obligations, to investigate and locate assets of the estate, and to complete his forensic accounting report. To date, the Receiver's team has compiled over 11,673 transactions from 23 identified accounts, which he is working with various vendors and financial institutions to reconcile and expects to identify thousands of additional transactions in the ongoing discovery process.

During the current quarter, the Receiver employed temporary workers to assist in winding down warehouse operations and to prepare for and execute the auction that took place in December 2021. The Receiver spent $4,324 for temporary

---

[2] While the Receiver has made his best effort to present accurate, detailed information in this report, the information presented is subject to change as more information becomes available and the Receiver completes his forensic accounting and presents it to this Court.

Ballard Spahr LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

workers during report period, and does not anticipate needing additional temporary labor for the balance of the case.

## III.   INVENTORY OF ASSETS AND ESTIMATE VALUE (LR 66-4(b)(2))

As of the date of this Report, the Receiver is holding approximately $7.84 million in cash belonging to Profit Connect, not including the $1.26 million in auction proceeds that were received in January. The standardized fund accounting report for the period through December 31, 2021, is attached to this report as Exhibit A.

Aside from the cash, the major assets remaining in this case consist of real properties and claims against certain parties. The real property consists of a home purchased by Profit Connect located at 7043 Calvert Cliffs Avenue, North Las Vegas, NV.  The home is currently empty and being prepared for sale once approved by this Court. The Receiver anticipates that his counsel will soon be filing a motion to seek such approval with a listing price of $459,000.  In addition, Profit Connect owns eight parcels of raw land in Searchlight, Nevada. The Receiver will shortly be seeking approval to retain a real estate broker to list and market the property for sale. The value of those parcels is currently being evaluated.

The Receiver has also determined that Profit Connect holds a number of liens against homes across the United States.  The liens appear to have been given by investors who were told that they could invest in Profit Connect by giving Profit Connect a lien against their residence for a particular amount, with the amount secured by the lien then being invested in Profit Connect. To the extent that no cash actually changed hands, the Receiver will seek Court authority to release these liens so that title can be fully reconveyed to the homeowners.

## IV.   SCHEDULE OF RECEIVER'S RECEIPTS AND DISBURSEMENTS (LR 66-4(b)(3)

In addition to the foregoing, please see Exhibit A.

## V.    LIST OF KNOWN CREDITORS WITH ADDRESSES AND AMOUNT OF CLAIMS (LR 66-4(b)(4))

LR 66-4 requires that the Receiver file a list of all known creditors with their addresses and the amounts of their claims.  The Receiver has compiled a list of trade creditors from Profit Connect's books and records, although he cannot yet vouch for its accuracy.   In connection with the First Receivership Report, the Receiver requested entry of an order excusing him from including investor names and addresses on proof of service filed with the Court.  The Court approved that request.  Although the First Receivership Report also requested that the Receiver be excused from submitting a list of known creditors with addresses and amount of claims, the order submitted by the Receiver omitted this formal approval.  Accordingly, as a housekeeping matter, the Receiver requests that any order approving this Second Report formally excuse the Receiver from compliance with this Local Rule.

## VI.    OTHER ITEMS TO REPORT

### 1.    <u>Current and Future Litigation</u>

As noted above, multiple investors have filed actions in an effort to recoup their losses.  The Court's receivership order (ECF No. 26) prohibits this.  For instance, on September 30, 2021, Jeffrey Nicholas filed a lawsuit styled *Jeffrey Nicholas v. Troy Sutton*, Case No. 5:21-cv-00208-H in the Northern District of Texas, alleging that Troy Sutton, as a Profit Connect agent, negligently induced Mr. Nicholas and others into making Profit Connect investments.   After Receiver's counsel moved to enjoin Mr. Nicholas's lawsuit (ECF No. 55), Mr. Nicholas dismissed his action and the Receiver withdrew his motion (*see* ECF No. 57).  There is yet another investor lawsuit pending in Texas state court making similar allegation, albeit this time against Mr. Nicholas.   The Receiver's counsel has been in conversation with that investor's counsel and anticipates that the parties will reach a resolution that benefits the receivership estate.

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

During his investigation, the Receiver has uncovered a number of fraudulent transfers from Profit Connect to various persons and entities. The Receiver has started to take action to claw back these transfers. On November 4, 2021, the Receiver's counsel filed a complaint seeking to claw back over $500,000 in investor funds fraudulently transferred to former Profit Connect employee and agent William Roshak, along with his current wife and ex-wife. The action is styled *Geoff Winkler, as receiver v. William Roshak, et al.,* Case No. 21-cv-02000 and is pending before this Court. The pleadings are closed, initial disclosures have been made, and the parties have a settlement conference scheduled before Magistrate Judge Weksler on March 24, 2022.

The Receiver anticipates filing further clawback actions as his investigation progresses, as well as damages actions for the role certain parties played in perpetuating the Profit Connect fraud.

### 2. The Receiver Requests Approval of a Settlement Agreement with a Former Employee Regarding a Truck

Brent Kovar caused Profit Connect to fraudulently transfer monies to a number of entities and persons for the benefit of Profit Connect employees, including Jocelyn Morris. More specifically, Brent Kovar transferred approximately $50,000 in investor funds to a local car dealership in connection with the purchase of a 2021 RAM 1500 Bighorn truck for Jocelyn's benefit and use. The Receiver approached Jocelyn about the fraudulent transfer and she agreed to relinquish the truck to the receivership estate without the need for litigation. The truck was included in the personal property auction. In consideration of Jocelyn's cooperation and the down-payment Jocelyn made on the truck, the Receiver agreed to ask the Court to authorize a $1,000 payment to Jocelyn. A copy of the parties' agreement concerning the truck is attached as Exhibit B.

## VIII.    RECOMMENDATION OF THE RECEIVER (LR 66-4(b)(5))

At this juncture, the Receiver has determined that Profit Connect was not operating a viable business and was quickly dissipating investor funds. So that the Receiver can continue to identify assets and claims and pursue them for the benefit of the receivership estate, the Receiver recommends that the receivership continue.

## IX.    CONCLUSION AND PETITION FOR FURTHER INSTRUCTIONS

Assuming the Court authorizes the Receiver to undertake the actions recommended herein, as well as to continue those actions provided for in the Appointment Order and any subsequent orders, the Receiver proposes to submit a further interim reports to this Court, addressing his progress, findings, final conclusions, and additional recommendations, approximately every 90 days.

Accordingly, and based on the foregoing, the Receiver respectfully requests that the Court enter an order:

1.    Accepting this Second Status Report;

2.    Authorizing the Receiver to continue to administer the Receivership Entities and their estate in accordance with the terms of the Appointment Order;

3.    Authorizing the Receiver to undertake the recommendations presented herein, including a continued engagement of those professionals he deems necessary for the proper administration of the Receivership Entities and their estate;

4.    Excusing the Receiver from compliance with the requirement in Local Rule 66-4(b)(4) that he file a list of creditors with amounts owed;

5.    Authorizing the Receiver to consummate the settlement with Jocelyn Morris; and

6.    Providing such other and further relief as the Court deems necessary and appropriate.

DATED THIS 7th DAY OF FEBRUARY, 2022

I, Geoff Winkler, verify under penalty of perjury that the statements made in the foregoing report are true and correct to the best of my knowledge.

_____
Geoff Winkler, Receiver

Dated: February 7, 2022

SMILEY WANG-EKVALL, LLP

By: /s/ Kyra E. Andrassy
    Kyra E. Andrassy, Esq.
    (Admitted *Pro Hac Vice*)
    3200 Park Center Drive, Suite 250
    Costa Mesa, California 92626

-and-

Maria A. Gall, Esq.
Nevada Bar No. 14200
BALLARD SPAHR LLP
1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada 89135

*Attorneys for Receiver*

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070